# Illinois Central Railroad Company v. Louisville Bridge Company.

(Decided October 12, 1916.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Contribution—Torts—Joint Tort Feasors—Indemnity.—The general rule is that where an accident is caused by the contributing negligence of two or more persons, and the injured party recovers damages against one of them, the tort feasor against whom the recovery is had cannot look to the other tort feasors for indemnity or contribution. But there are exceptions to this general rule.

2. Contribution—Torts—Joint Tort Feasors—Indemnity.—"S" was wrongfully forced to leave a moving train, and when he was put off his foot was caught in an unblocked frog under the control of a bridge company. He sued the bridge company and recovered a judgment. In a suit by the bridge company against the railroad company for indemnity, held that as the accident was caused by the co-operating, wrongful acts of both companies, the bridge company could not have indemnity against the railroad company.

3. Negligence—Proximate Cause.—Two agencies acting entirely independently of each other may jointly and concurrently be the proximate cause of the injury when it would not have happened except for the concurrence at the same time and place of the two negligent acts.

TRABUE, DOOLAN & COX, BLEWETT LEE, R. V. FLETCHER and J. BLAKEY HELM for appellant.

GIBSON & CRAWFORD, WILLIAM W. CRAWFORD and CHARLES H. GIBSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Some years ago John Sieber, while stealing a ride on a train of the Illinois Central Railroad Company at a time when the train was using the tracks of the Louisville Bridge Company in one of the streets of the city of Louisville, was forced, as he claimed, by an employe of the railroad company to get off the train. When he got off his foot caught in a frog in the track, and in an effort to extricate himself one of his legs was cut off by the train. He brought suit against the railroad company and the bridge company to recover for his injuries, charging that he was wrongfully forced off the train by the porter and that the bridge company negligently maintained in the street a dangerous, unblocked frog.

Both the railroad company and the bridge company filed answers denying negligence or liability, and on a trial of the case before a jury there was a verdict and judgment in favor of the railroad company and against the bridge company for five thousand dollars.

From the judgment against it the bridge company prosecuted an appeal to this court, and the judgment was reversed in an opinion that may be found in 157 Ky. 151. In the course of the opinion the court, after a reference to the doctrine that a corporation owning a railroad is responsible to the public for wrongs done by its lessee in operating it, said:

"Although Sieber was on the train unlawfully, and was a trespasser upon it, the railroad company had no right wantonly to injure him. . . . And if he was forced from the train by the railroad company or its servant acting within the apparent scope of his authority, the railroad company was answerable for this wrong, and the bridge company likewise answerable, if by reason of it, he was injured. Or, if in addition to this, the street was not in a reasonably safe condition for use by persons exercising ordinary care for their own safety, and he was injured by reason of the combined effect of being wrongfully forced from the train by the railroad company, and the dangerous condition of the street as maintained by the bridge company, he may recover. . . .

"The bridge company and the railroad company were not adversary parties in this case. The bridge company would be in no manner concluded by a verdict and judgment against the railroad company; and the same effect must be given the verdict and judgment in favor of the railroad company. The case stands for trial between the plaintiff and the bridge company as though no trial had been had between the plaintiff and the railroad company."

"If the bridge company is held liable to Sieber, its rights against the railroad company will not be affected by the failure of Sieber to make out his case against the railroad company. The case is to be tried anew as though no trial had been had."

After the case was remanded, there was another trial in which Sieber recovered a judgment against the bridge company for two thousand dollars, and thereupon the bridge company paid the judgment and brought this suit against the railroad company to recover from it

the amount paid in satisfaction of the judgment and its reasonable attorney fees in defending this suit. By agreement of parties the law and facts were submitted to the trial judge, and there was a judgment in favor of the bridge company against the railroad company for the amount recovered by Sieber and for the costs paid by the bridge company, including attorney fees in defending the case, and from that judgment this appeal is prosecuted by the railroad company.

Proceeding upon the theory that the railroad company was primarily liable to Sieber as between it and the bridge company, the bridge company, before the second trial of the case and after its return from this court, notified in writing the railroad company of the contemplated re-trial of the case and demanded that it take charge of the defense of the case. The railroad company, however, declined to defend, upon the ground that there was no liability on its part in any contingency for the damages that might be recovered; and so the case was defended by the bridge company alone with the result stated.

A good deal is said by counsel on both sides as to the effect of the opinion of this court on the former appeal. But we do not think the result of the first trial or the former opinion should have any controlling influence in determining the rights of the parties on this appeal. And so we will treat the case as if Sieber had sued the bridge company alone and the second trial of the case against the bridge company was, in fact, the first and only trial. We say this because the railroad company was not a party to the former appeal, which was between the bridge company and Sieber alone, and hence the railroad company could not be bound by the decision of this court on that appeal. Nor could anything said by the court in that opinion be considered as affecting adversely the substantial rights of the railroad company.

It is, however, pertinent to say that in the former opinion the court held that Sieber could not recover unless he was wrongfully forced from the railroad train and not even then unless the bridge company was guilty of negligence in maintaining an unblocked frog, and accordingly the court on the second trial told the jury in instruction number one that:

"If you believe from the evidence that the plaintiff John Sieber, Jr., while on an Illinois Central Railroad train, at the time and place mentioned in the evidence, was forced to leave the train by the porter on said train, and that in so forcing the plaintiff to leave the train, if he did so, the porter acted in the line of his employment and within the scope of his authority, and the plaintiff, Sieber, while undertaking to alight from the train was thereby caused to catch his foot in a switch or frog, and as a result thereof a wheel or wheels of the car of said train ran over the plaintiff Sieber's leg, and so injured the same that it was required to be amputated, then the law of the case is for the plaintiff and the jury should so find.

"But, unless you believe from the evidence that, while the plaintiff, Sieber, was on said train, the porter on the said train forced him to leave the same, and that in so doing he acted in the line of his employment, and within the scope of his authority, and unless you further believe from the evidence that by reason thereof the plaintiff, Sieber, was caused to catch his foot in a switch or frog, and was thereby so thrown that the wheel or wheels of said car ran over his leg and injured the same, so that it was required to be amputated, then the law of the case is for the defendant, Louisville Bridge Company, and you should so find."

And in instruction number two said: "The court further instructs the jury that it was the duty of the defendant, Louisville Bridge Company, to exercise ordinary care to so maintain its switch or frog, mentioned in the evidence, as not to render the street in a condition not reasonably safe for the use of persons exercising ordinary care for their own safety, and if the jury believe from the evidence that the plaintiff was forced from the train as submitted to them in the first instruction, and further believe from the evidence that at the time and place in the evidence referred to, the defendant, Louisville Bridge Company, maintained a switch or frog, which by reason of its condition, rendered the street not reasonably safe for use of persons exercising ordinary care for their own safety, and should further believe from the evidence that by reason of such unsafe condition of said street, if it was unsafe, the plaintiff was caused to catch his foot in said switch or frog, and should further believe from the evidence that, by

reason of catching his foot in the said switch or frog, if he did so, he was caused to fall, and in endeavoring to dislodge or extricate his foot from the said switch or frog, the other foot or leg was caused to be placed or moved under the train, and that thereby the wheel or wheels of a car of said train was caused to run over his leg and to injure the same so that it was required to be amputated, then the law is for the plaintiff, and the jury should so find. But, unless you so believe from the evidence the law is for the defendant and you should so find, unless you find for the plaintiff under instruction number one.''

From these instructions it is manifest that the jury, in finding a verdict against the bridge company, reached the conclusion, first, that the railroad company wrongfully forced Sieber to leave the train, and, second, that the defective condition of the frog maintained by the bridge company made the street unsafe. The jury had to believe that both these conditions existed before they could find a verdict in favor of Sieber. In other words, the jury had to find that the railroad company was guilty of negligence in forcing Sieber to leave the train and that the bridge company was guilty of negligence in maintaining a defective and unsafe frog. Both parties were wrongdoers and the wrongdoing of both of them brought about the injury of which Sieber complained. If he had not been forced from the train, of course, his foot could not have been caught in the defective frog, nor if he had been wrongfully forced from the train would he have been injured if the frog had been in safe condition.

So that the bridge company and the railroad company are in the attitude of joint wrongdoers. The fact that the tort committed by each was not precisely simultaneous in point of time is not material. The material thing is that their independent joint wrongdoing cooperated and concurred in bringing about the accident and injury.

The situation of the bridge company and the railroad company is very much like that presented in City of Louisville v. Hart, 143 Ky. 171. In that case Hart was killed when, on account of defects in a street of the city, he was thrown from a wagon in front of a street car running at a dangerous and negligent rate of speed.

His administrator brought suit against the city and the Louisville Railway Company to recover damages for his death, charging that the accident that resulted in his death was due to the negligence of the city in failing to keep the street at the point of the accident in reasonably safe condition for public travel, and to the high and dangerous rate of speed at which the street car was running. During the trial the trial court dismissed the action against the railway company, but the case proceeded against the city and a judgment was obtained against it for four thousand dollars.

On the appeal of the city from the judgment against it, it was contended that the negligence in the operation of the street car and not the unsafe condition of the street was the proximate cause of Hart's death, and that the street car company and not the city was liable to his estate in damages. In disposing of this feature of the case the court said:

"Now we may assume that if the street had been reasonably safe he would not have been thrown from his wagon, and, of course, would not have been killed. We may further assume that if the street car had been operated with ordinary care, it could have been stopped before striking him, and so, although the defective condition of the street caused him to fall on the track, he would yet have escaped injury except for the negligence in the operation of the car. We have, then, two approximately concurring acts of negligence by two independent agencies that brought about his death. Neither act of negligence in itself, without the co-operation of the other, would have harmed him. On the one hand, however fast the car was going, unless he had been thrown in front of it, he would not have been killed. On the other hand, although thrown on the car track by the bad street, he would have escaped death if the car had been prudently operated. The question now is, which of these acts of negligence was the proximate cause of his death? We think that both of them may be so treated. Two agencies acting entirely independent of each other, as in this case, may jointly and concurrently be the proximate cause of an injury, when it would not have happened except for the concurrence at approximately the same time and place of the two negligent acts."

After paying the judgment, which was affirmed, the City of Louisville brought suit against the Louisville Railway Company to recover from it the amount of the judgment and its expenses in defending the suit, upon the ground that "inasmuch as neither of the parties stood in the attitude of an intentional wrongdoer and neither's negligent act was tainted with any moral wrong, contribution should be allowed." But in denying the right of the city to have contribution from the railway company, this court, in City of Louisville v. Louisville Ry. Co., 156 Ky. 141, said:

"The negligent act of each was the violation of a duty it owed to the public; operating concurrently the two negligent acts brought about the result; they were each equally remiss in the performance of their duties to the public. That being true, when either appeals to the public, through its courts, for redress against the other, it will be denied, and they will be left where they are found. The machinery of the courts will not be put in motion to relieve one wrongdoer from the consequences of his wrongful act against another wrongdoer equally guilty."

These expressions of the court in that case seem very pertinent here. Both the railroad company and the bridge company were guilty of negligence. Their joint and approximately concurring negligence brought about the accident to Sieber. The two negligent acts did not contribute to the accident precisely at the same moment. There was a slight intervening period between the time when Sieber was ejected from the train and the time when his foot caught in the unblocked frog. But they were so nearly concurrent as to make them almost simultaneous, in fact, as much so as the negligence of the city and the street railway company that brought about the death of Hart.

But the bridge company, notwithstanding its proven negligence, insists that it should have a judgment against the railroad company because, except for the railroad company's first act of negligence, the accident would not have happened. And in support of this contention reliance is had upon the case of the Pullman Co. v. C. N. O. & T. P. R. R. Co., 147 Ky. 498. In that case the Pullman Company manufactured and delivered to the railway company a car with a defective brake staff. Ward, a brakeman in the service of the railroad

company, was injured by this defective staff while undertaking to operate the brake. Upon a trial of the case there was a verdict for the Pullman Company, and a verdict and judgment against the railroad company. The railroad company paid the judgment and then brought suit against the Pullman Company to recover the amount paid. In holding that a recovery was allowable, the court put its decision upon the ground that "the primary negligence was in the Pullman Company. The negligence of the Pullman Company created the danger. The negligence of the railroad company was only failing to discover it. . . . This was not a case of concurrent negligence by two wrongdoers. The negligence of the railroad company consisted simply in its failure to discover the prior negligence of the Pullman Company. The railroad company did not create the danger; it simply used the car for the purpose for which it was intended."

We do not regard that opinion as controlling authority in this case because it was rested on principles and facts that take it out of the prevailing rule that there can be no recovery between joint tort feasors, although there are exceptions to this general rule as there are to every general rule. Among these exceptions is that line of cases in which it has been held that a city that has been compelled to respond in damages for defects or obstructions in its street may recover from the person who caused the defect or placed the obstruction in the street. Board of Councilmen v. Vanarsdall, 148 Ky. 507; City of Georgetown v. Groff, 136 Ky. 662; Blocker v. City of Owensboro, 129 Ky. 75; Western Union Telegraph Co. v. City of Louisville, 160 Ky. 499; City of Louisville v. Davis, 157 Ky. 189. Other exceptions are pointed out in Union Stockyards Co. v. Chicago R. R. Co., 196 U. S. 217, 49 Law. Ed. 453.

To say that the bridge company and the railroad company were not joint tort feasors in this case, or that under the facts of this case the bridge company could recover from the railroad company the amount it was required to pay for its concurring negligence, would be to create a new exception in the law controlling cases like this and to lay down a rule at variance with all the authorities that have come under our notice. With the exception of the Pullman Company case where a recovery was allowed on the ground that the first and primary

act of negligence was committed by the Pullman Company as a manufacturer in sending out a car with a defective appliance so covered up with paint that by an ordinary inspection the defect could not be discovered, and the cases holding that where a city has been compelled to respond in damages for an obstruction or defect in its street caused by the negligent act of a third party, it may recover against the person whose negligence caused the accident, and that other class of cases where a master or some one sustaining a similar relation has been permitted to recover against his servant who committed a wrongful act for which the master had been held liable, and in which wrongful act he had not actively participated and was only liable to the injured party because of the relation he sustained towards him, this court has uniformily ruled that between joint tortfeasors there can be no recovery against the other by the one who has been required to respond in damages for injuries caused by the joint or concurring negligence of both; Cumberland Telp. & Telg. Co. v. Mayfield W. & L. Co., 166 Ky. 429; Owensboro City R. R. Co. v. L. H. & St. L. Ry. Co., 165 Ky. 683.

The rule and its exceptions as they have been adopted by this court are laid down with care in Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 40 L. Ed. 712; and Union Stockyards Co. v. Chicago, B. & Q. R. R. Co., 196 U. S. 217, 49 L. Ed. 453, and it is not necessary to extend this opinion repeating them here.

In our opinion, this is a typical case of one wrongdoer seeking indemnity from another joint wrongdoer, and it falls directly within the line of cases in which contribution or indemnity has been disallowed. Here both parties were guilty of active, affirmative, wrongful acts —the railroad company in forcing Sieber to leave the train and the bridge company in maintaining an unsafe place in the street—which jointly contributed to his injury.

The mere circumstance that the wrongful act of the railroad company happened a moment before the negligent act of the bridge company became operative, does not take the case out of the general rule. In cases like this the matter of time is only an incident. The liability or non-liability for indemnity does not depend on the question of which one of the wrongdoers committed the first negligent act in point of time but on the question

whether their co-operating acts of negligence brought it about. It is the fact that their joint and co-operating negligence produced the injury which determines that one cannot have indemnity from the other.

It is also argued by counsel for the bridge company that the act of the railroad company was not only first in point of time but was the proximate cause of the injury, and so indemnity may be had. But under the facts of this case the co-operating and approximately concurring wrongs of both parties were the proximate cause of the injury, and between themselves one is equally as guilty as the other and neither could have indemnity or contribution from the other; Cooley on Torts, page 78; Shearman & Redfield on Negligence, section 39; Louisville Home Tel. Co. v. Gasper, 123 Ky. 128; Walrod v. Webster Co., 110 Ia. 349, 47 L. R. A. 480.

Wherefore, the judgment is reversed, with directions to dismiss the petition.